# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 5325 |
| v. | ) | |
| | ) | |
| DOUGLAS NICHOLS, et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The defendants argue that the plaintiff, Brian Johnson, failed to preserve video evidence critical to their defenses, and they move for sanctions in the form of an adverse inference instruction telling the jury that it can assume that the video would have been unfavorable to Johnson, or in the alternative, for an instruction simply notifying the jury that Johnson had a duty to preserve the video footage but failed to do so. For the reasons explained below, the defendants' motion is granted. If the evidence at trial comports with the evidence the defendants have referenced in their briefs, the Court will give the jury an adverse inference instruction.

## BACKGROUND

In his complaint, Johnson alleges that the defendants, who are each Chicago police officers, falsely arrested him and used excessive force against him in violation of 42 U.S.C. § 1983. According to the complaint and Johnson's response to the defendants' motion, Johnson was the security guard on duty in a residential building in Chicago when the defendants arrived to execute a search warrant in the building. The target of the search warrant was an apartment on the first floor of the building that was occupied by Johnson's brother, Preston. When the defendants arrived at the building, however, they falsely told Johnson that they were responding

to a report of a domestic disturbance on the third floor, and they asked him to open the building's security gate to allow them to enter, which he did. After the defendants entered the building, Johnson led them up the stairs. At that point, according to the defendants, in order "[t]o secure the scene, Officer Heard [a defendant in this lawsuit] placed [Johnson] against the wall in the stairwell and handcuffed him." Def. Mot. (Dkt. 28) at 2. The defendants then realized that they needed to pass through a locked door on the first floor to reach the apartment that was the target of their search, and they asked Johnson to unlock the door. Here, the parties' stories diverge. Johnson claims that he was confused by the request because the officers had initially told him that they needed access to the third floor, and also because he was obviously unable to unlock the door to the first floor while wearing handcuffs. The defendants allege that Johnson willfully refused to open the door in order to obstruct them and that he pulled his keys away when one of the defendants, Officer Nichols, reached out to grab them. In any event, the parties agree that Officer Nichols then placed Johnson under arrest for obstructing a police officer and removed him from the building to a police vehicle waiting outside.

In their depositions, Johnson and his brother, Preston, both testified that there are working video cameras in the building that should have captured footage of the defendants' actions. The deposition testimony indicates that there are at least three video cameras that would have recorded Johnson's interactions with the defendants: one in the stairwell where Johnson was handcuffed by Officer Heard, one in the entry area where Officer Nichols arrested Johnson, and one at the building's entrance where the defendants came in and where Johnson was escorted out after his arrest. The defendants requested the footage from all three cameras, but Johnson

2

produced only the footage from the building's entrance, which does not show Johnson being handcuffed or arrested.[1]

Johnson admitted in his deposition that he was in charge of the video surveillance system that was installed in the building. He further testified that the building's video footage is automatically deleted after a certain period of time unless he or someone else in the building takes action to maintain it. Johnson was unable to say exactly how long the video footage is automatically kept before being deleted, but he estimated video footage was available for between three days and a week. The defendants asked Johnson whether he still had the video from the day of the incident, but he said that he did not because the footage was "probably deleted." The defendants then asked Johnson whether he made any efforts to retain the footage, and he said that he could not do so because he was in jail "for three days" after the incident. Johnson's arrest report and bond, however, indicate that he was released from jail the day after the incident. Johnson also testified that when he returned home from jail, he did not personally check to see if the video had been deleted. Rather, he asked another of his brothers, Oscar, about the footage, and Oscar told him that the footage was gone. Johnson admitted that he did not know whether Oscar actually checked to see if the video was available.

## DISCUSSION

When a party fails to preserve evidence, Fed. R. Civ. P. 37(c)(1)(B) permits the Court to sanction the party by "inform[ing] the jury of the party's failure." To determine whether sanctions are appropriate, "the Court is guided by whether: 1) there was a duty to preserve the [evidence]; 2) the duty was breached; 3) the culpability for the breach rises to a level of

---

[1] Johnson produced this video after Johnson's deposition and after the defendants filed their motion for sanctions, but before they filed their reply brief.

willfulness, bad faith, or fault; 4) Defendant[s] w[ere] prejudiced; and 5) an appropriate sanction can ameliorate the prejudice from the breach." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 800 (N.D. Ill. 2010).

"A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action." *Id.* Johnson had control over the video footage at issue. He admitted in his deposition that he was "in charge" of the building's video surveillance system, and he stated in his response brief that in other instances he has been able to provide copies of videos to the Chicago Police Department upon request. Upon his release from jail, Johnson reasonably knew or could have reasonably foreseen that he would bring a § 1983 lawsuit against the defendants (he was fully aware at that time of the factual predicate for his claims), and that video of the incident could be material to that litigation. The parties dispute whether the video still existed by the time that Johnson was released from jail, but it is undisputed that Johnson never even checked to see if the video still existed. Rather, Johnson relied on Oscar's statement that the video was "gone" even though he did not know whether Oscar had checked. We now know that Oscar's statement was incorrect, at least insofar as video footage of the building's entrance still existed. The defendants have shown that Johnson had a duty to preserve the video evidence, and he breached that duty.

The defendants have also shown that Johnson was at fault for failing to preserve the video footage. In this context, "fault" means that Johnson's conduct in failing to preserve the evidence was unreasonable. *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). Here, Johnson's conduct was unreasonable because he failed to make any effort whatsoever to preserve the video footage despite the fact that he knew or should have known that it might be relevant to his claims. Because Johnson was at fault, sanctions are permissible. *Id.*

4

The defendants have further shown that Johnson acted in "bad faith," the level of culpability required to obtain an adverse inference instruction. The defendants first suggested that Johnson acted in "bad faith" and requested an adverse inference instruction in their reply brief.[2] "A party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008)). Assuming the evidence at trial confirms what the defendants have argued here—*i.e.*, that Johnson admits that he was in control of the video, that he admits that he never attempted to preserve the video except by asking Oscar whether the video existed, and that he at first did not produce any video but that he later video from the least probative camera at the front of the building—the defendants have made out a prima facie case that Johnson acted in bad faith. Although there is no evidence that Johnson ever viewed the video footage before it was destroyed, and therefore there is no evidence that he knew for certain whether it contained adverse information that would harm his claims, Johnson's ability to produce (albeit tardily) the least probative video footage makes his failure to produce the footage from the more probative cameras suspicious—sufficiently so for a jury to conclude that the failure to preserve the video from the cameras that were most likely to have captured the relevant conduct was not inadvertent. Whether Johnson actually destroyed the video (or allowed it to be destroyed) in bad faith is a question of fact, and the Seventh Circuit Pattern Jury Instruction relating to adverse inferences appropriately leaves it up to the jury to determine

---

[2] Defendants' initial motion requested only an instruction that Johnson had a duty to preserve the video footage but failed to do so. After the defendants filed their motion and Johnson produced the video of the building's entrance—from the only one of the three cameras that did not capture significant interactions between Johnson and the defendants—the defendants requested in their reply brief that the jury be instructed that it could draw an adverse inference from that failure.

5

whether Johnson destroyed the video in bad faith.[3] The defendants have shown sufficient evidence of bad faith to warrant the instruction.

Further, the defendants argue that destruction of the video prejudiced them, and that this jury instruction would partially mitigate the prejudice. The defendants are correct that they are prejudiced to the extent that the video would have shown that they did not use excessive force or that they had probable cause to arrest Johnson. And an adverse inference instruction would mitigate that prejudice. The defendants will bear the burden of proving to the jury by a preponderance of the evidence that Johnson intentionally destroyed the video in bad faith. If they are able to so prove, the jury will assume that the video evidence would have been unfavorable to Johnson, mitigating the defendants' prejudice at least somewhat.

Therefore, the Court, in its discretion, grants the defendants' motion for sanctions and, assuming the evidence at trial related to the video is consistent with the evidence that the defendants have advanced in this motion, the Court will give the jury Seventh Circuit Pattern Jury Instruction 1.20, modified as appropriate.

---

[3] Seventh Circuit Civil Pattern Jury Instruction 1.20 reads (inserting the parties' names):

> The defendants contend that Johnson at one time possessed [*describe evidence allegedly destroyed*]. However, Johnson contends that [*evidence never existed, evidence was not in its possession, evidence was not destroyed, loss of evidence was accidental, etc.*].
>
> You may assume that such evidence would have been unfavorable to Johnson only if you find by a preponderance of the evidence that:
>
> (1) Johnson intentionally [destroyed the evidence] [caused the evidence to be destroyed]; and
> (2) Johnson [destroyed the evidence] [caused the evidence to be destroyed] in bad faith.

Entered: August 12, 2013

John J. Tharp, Jr.
United States District Judge