**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| BRIAN JOHNSON, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | 12 CV 5325 | |
| v. | ) | | |
| | ) | Judge John J. Tharp, Jr. | |
| DOUGLAS NICHOLS, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Johnson's claim stems from his July 2010 arrest for resisting or obstructing the performance of a police officer, in violation of 720 ILCS 5/31-1. Johnson alleges that defendant Chicago Police Officers Douglas Nichols, Manuel Leano, Lawrence Lowrey, Armand Heard, and Robert Gonzalez violated his constitutional rights in violation of 42 U.S.C. § 1983. Specifically, Mr. Johnson has filed § 1983 claims for false arrest, conspiracy, excessive force, and failure to intervene. The defendants now move for summary judgment, and for the reasons that follow, their motion is granted in part and denied in part. Mr. Johnson may proceed with his false arrest and failure to intervene claims against defendants Heard and Nichols. He may also proceed with his excessive force claim against Heard. But with respect to the other claims against Nichols and Heard, and all claims against defendants Leano, Lowrey, and Gonzalez, the defendants' motion for summary judgment is granted.

**Facts[1]**

On July 26, 2010 defendant Nichols obtained a warrant to search the premises located at 5636 S. Martin Luther King Drive in Chicago, Illinois for illegal firearms, contraband, narcotics, and associated paraphernalia. DSOF ¶ 8. The building is located in a high crime area and, in the past, police had frequently responded to calls for service there. DSOF ¶ 5. Plaintiff Brian Johnson resides in unit four of this building and works as the building security guard. DSOF ¶ 4. The individual who was the target of the search, Preston Johnson, is Mr. Johnson's brother and resides in the unit designated in the search warrant.

After the search warrant was obtained by Nichols, the participating officers held a planning meeting to discuss the execution of the warrant. DSOF ¶ 10. All of the defendants were present at the planning meeting at some point and time, *id.*, although the parties dispute whether Heard was present for the entirety of the meeting. Pl.'s Resp. to DSOF, ¶ 10.Nichols conveyed to the other defendant officers that Preston Johnson was the primary target of the search warrant, and that he had an extensive criminal history, which included a murder conviction and other firearm-related arrests. *Id.* Defendants Heard and Lowrey were tasked with gaining initial entry into the building. DSOF ¶ 11.

On the day the warrant was executed, both Heard and Lowrey approached the building while wearing their Chicago Police Department uniforms and duty belts. DSOF ¶ 12. When they rang the building doorbell, Brian Johnson answered and asked how he could help them. DSOF ¶

---

[1] The summary of material, undisputed (or not properly disputed) facts is drawn from the parties' statements and responses pursuant to Local Rule 56.1, and the facts and reasonable inferences therefrom are construed in favor of Johnson, the non-moving party. See Cung Hnin v. TOA (USA), LLC, 751 F.3d 499, 503–504 (7th Cir.2014); Senske v. Sybase, Inc., 588 F.3d 501, 503 n.1 (7th Cir.2009) (facts are properly disputed only with citations to evidence that directly contradicts opponent's assertions).

13. In order to maintain the element of surprise, Heard and Lowrey did not mention the search warrant to Johnson. Instead, they told him that they were responding to a domestic disturbance call on the third floor of the building. DSOF ¶ 14. Johnson then opened both of the outer security doors to the building and allowed the officers to enter. DSOF ¶ 15.

What happened next is subject to some dispute. Both Johnson and the defendants agree that once in the building Officer Lowrey then left Officer Heard with Johnson and went back outside to open the gates around the building to allow the rest of the search warrant team to enter. DSOF ¶ 17. When the search team began entering the building, Johnson began to lead them up the stairs from the front door of the building to the first floor landing. The parties also agree that Heard then placed handcuffs on Johnson, but the manner in which Heard handcuffed Johnson is disputed and the testimonial record is somewhat difficult to unravel. The gist of Johnson's contention is that Heard, standing above Johnson on the stairs, suddenly grabbed Johnson's right arm and pulled it back and high up in the air, holding it there while he cuffed first that arm and then Johnson's left arm. PSOF ¶¶ 4, 29. Heard, on the other hand, asserts that he simply grasped Johnson's right arm at the elbow and pulled that same arm behind Johnson's back and proceeded to handcuff him. DSOF ¶ 18. It is undisputed that Heard shoved Johnson against the wall while placing him in the handcuffs. PSOF ¶ 5.

Officer Nichols, who had entered with the search team and was just below Johnson on the stairs then ordered Johnson to open the door to the hallway that would provide access for the rest of the team to the target unit. PSOF ¶ 9. Johnson responded that he could not do so because he was handcuffed. *Id.* Nichols then grabbed Johnson's keys off of his belt, ripping his pants in the process. The defendants assert that Johnson "pulled away" when Nichols reached for Johnson's keys. DSOF ¶ 28. Johnson contends that he was not pulling away from Nichols; rather, he was

falling away because Heard was simultaneously pulling him up the stairs while Nichols was tugging at his waist from below. PSOF ¶ 11. But in any event, it appears that Johnson was moving away, either intentionally or unintentionally, as Nichols reached for the keys.

Once Nichols had obtained the keys from Johnson he asked him which key was the correct key to open the door, and Johnson identified the wrong key twice. DSOF ¶ 26. According to Johnson, Nichols then told him that he was under arrest "for obstruction and being stupid." PSOF ¶ 12. The defendants do not dispute, however, that Johnson was confused and disoriented by Nichols' requests because the officers had initially told him that they needed access to the third floor, and also because he was obviously unable to unlock the door to the first floor while wearing handcuffs and because he had previously had a stroke in 2000. PSOF ¶ 10. The key ring that Nichols took from Johnson had many keys to the various units and doors in the building. DSOF ¶ 7.It is undisputed that there were approximately forty-six units in the building.

Rather than wait for further attempts by Johnson to identify the correct key, the entry team proceeded to open the door to the hallway by using a crowbar. DSOF ¶ 29. The team then continued with the execution of the search warrant, and Johnson remained at the scene, handcuffed, while they did so. Johnson was then placed into a police transport wagon, where he complained to an unknown officer that he was hot and having difficulty breathing. DSOF ¶ 33. The officer subsequently provided Johnson with his asthma medication. DSOF ¶ 34. After a short period of time, Johnson was transported to the police station. DSOF ¶ 35.

At the station, Johnson was seated on a bench with his right hand handcuffed to the bench railing. DSOF ¶ 36. He complained to another officer at the station that his hand was hurting due to the handcuff. *Id.* The officer attempted to alleviate Johnson's pain by switching the handcuff to the opposite hand. *Id.* Defendants contend that none of the officers named in Johnson's

complaint had any knowledge that his handcuffs were fastened too tightly. *Id.* Johnson asserts that defendants Nichols, Gonzalez, and Leano must have been aware that his wrist was swollen at the station because there were in the vicinity as they completed their arrest reports and inventoried evidence. DSOF ¶ 40. However, Johnson admits that neither Lowrey, Leano, nor Gonzalez ever placed handcuffs on him or otherwise used force against him. DSOF ¶ 39.

On September 13, more than seven weeks after Johnson's arrest, he sought treatment for injuries that he claimed he sustained during his arrest on July 26. Johnson was later diagnosed with damage to his right radial nerve (located in his right hand), a probable SLAP tear,[2] and a partial tear of the right bicep tendon. PSOF ¶ 23. The cause of these injuries is in dispute, but the defendants acknowledge that Johnson's hand "may have been injured because the handcuffs were too tight." Resp. to PSOF ¶ 18.

### Discussion

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-

---

[2] A SLAP tear is an injury to the labrum of the shoulder, which is the ring of cartilage that surrounds the socket of the shoulder joint. PSOF ¶ 37.

52 (1986). With these principles in mind, defendants' motion with respect to Johnson's claims against each defendant is addressed below.

1. **False Arrest**
   a. **Defendant Nichols**

   Nichols asserts that he is entitled to summary judgment on Johnson's false arrest claim because, under Illinois law, he had probable cause to arrest Johnson for obstruction. Defs.' Mot. for Summ. J., at 4. Alternatively, he contends that even if he lacked probable cause to arrest Johnson, he is entitled to qualified immunity. *Id.* Nichols' arguments with respect to Johnson's false arrest claim, however, are cloaked in questions of disputed fact, making summary judgment inappropriate.

   The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713-14 (7th Cir. 2013); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause exists if "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott*, 705 F.3d at 714. Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996); *Tebbens v. Mushol*, 692 F.3d 807, 819 (7th Cir.2012); *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (probable cause inquiry must be done from the standpoint of an objectively reasonable police officer). On a motion for summary judgment, if the existence of probable cause turns on disputed facts then granting summary judgment is inappropriate. *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008); *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (probable cause "assessments typically would fall within the province of the jury…it is a

proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them").

Although the existence of probable cause to arrest for any crime, whether charged or not, would defeat the plaintiff's false arrest claim, *see Devenpeck v. Alford,* 543 U.S. 146, 153–55 (2004) (where officer has probable cause to arrest a suspect for any crime, there is no Fourth Amendment violation even if the officer lacked probable cause with respect to the actual offense charged), in this case the probable cause inquiry begins and ends with an application of the Illinois' obstruction statute; Nichols does not argue that he had probable cause to arrest Johnson for any other crime. Under Illinois law, a person is guilty of obstruction when they knowingly resist or obstruct the performance by one known to that person to be a police officer, firefighter, of any authorized act within his or her official capacity. 720 Ill. Comp. Stat. § 5/31-1 (a). In interpreting this provision, Illinois state courts have been abundantly clear that a defendant must engage in some act of physical resistance in order to be guilty of obstruction, and that mere argument with an officer or noncompliance is generally insufficient to constitute a violation of section 5/31-1. *Abbott*, 705 F.3d at 721 (citing *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968)). This physical act must impose an obstacle that could impede, hinder, interrupt, prevent or delay the performance of the officer's duties, "such as going limp, forcefully resisting arrest, or physically aiding a third party to avoid arrest." *Id.* Illinois courts repeatedly confirm that "refraining from physical action or failing to cooperate with the police is generally not considered the same as resisting or obstructing an officer." *People v. Cope*, 701 N.E.2d 165, 169 (Ill. App. 2d Dist. 1998) (defendant's conviction for violating section 5/31-1 was overturned because her refusal to open her locked restaurant for police was simply a "passive refusal to acquiesce" and "was not a physical act as required by the statute").

Construing the facts in Johnson's favor, the Court concludes that they would be sufficient to sustain a jury verdict in his favor on his false arrest claim. As a preliminary matter, it should be noted that Johnson's acknowledged failure to open the door for the search warrant team would not be enough satisfy the obstruction statute's physical act requirement. When Nichols asked Johnson to open the door, Johnson indicated that he could not do so because he was handcuffed. PSOF ¶ 9. Moreover, Johnson did not even go as far as refusing to open the door, as was the case in *Cope*; rather, he was unable to comply because he had already been handcuffed. Viewing these facts in the light most favorable to Johnson, because it was physically impossible for Johnson to open the door, failing to open the door when requested could not constitute obstruction.

Nichols also indicated that Johnson twice identified the wrong key when he was asked which key opened the door to the target unit, and seemingly provides that as justification for the arrest. DSOF ¶ 27. In order to be liable under section 5/31-1, however, a defendant must knowingly act in a way to obstruct an officer in the performance of his duties. 720 Ill. Comp. Stat. Ann. 5/31-1 (a). Johnson attests that he inadvertently identified the wrong keys because he was startled and confused when the officers he was cooperatively leading through the building suddenly grabbed him, handcuffed him, and began demanding keys to areas other than the one that they had initially told Johnson was their destination. PSOF ¶ 10. The defendants, moreover, do not dispute that Johnson was disoriented and confused during this episode. Response to PSOF ¶ 10. Viewing these facts in the light most favorable to him, a jury would not be irrational in concluding that Johnson inadvertently, rather than intentionally, identified the wrong keys in response to Nichols' demands; such an inadvertent mistake would be insufficient to constitute a "knowing" refusal to comply with Nichols' commands. 720 Ill. Comp. Stat.§ 5/31-1 (a); *see*

*Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009) (court noting that on summary judgment when analyzing the officer's probable cause to arrest for obstruction, there must be "no dispute that the facts showed that these plaintiffs **knowingly** resisted or obstructed the officers' work.") (emphasis added).

Nichols also asserts that because the already handcuffed Johnson was "pulling away" from him when he reached for the keys that were fastened to Johnson's belt, he had probable cause to arrest Johnson for violating section 5/31-1. DSOF 28. Johnson, however, maintains that he was not in fact pulling away from Nichols, but instead was being **pulled** away from him and up the stairwell by Officer Heard who had hold of his arms. *Id.* Nichols correctly points out that even when accepting Johnson's telling of the facts as true, Johnson was still moving away from Nichols and argues that, from an objective standpoint, a reasonable officer could conclude that Johnson was being noncompliant. However, a reasonable officer in Nichols' position would also have known (or so a jury could reasonably conclude) that because Nichols, Heard, and Johnson were all within close quarters of one another and Heard had just placed handcuffs on Johnson, that Johnson's movement was caused by the other officer and was not a "knowing" act of resistance on the part of Johnson. Rather, a jury could reasonably conclude, on this record, that Johnson was, as he maintains, trying to assist the officers rather than obstruct them. Such conflicting inferences are exactly why analyzing the validity of the arresting officer's probable cause is best left for the finder of fact, and the court is unable to determine as a matter of law that Nichols had probable cause to arrest Johnson.

In the alternative, Nichols contends that his actions are cloaked in qualified immunity. Defs.' Mot. for Summ. J., at 4. When determining whether the defense of qualified immunity is available, if there is a finding that there was no probable cause, the courts look to whether "a

reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). This standard is often referred to as "arguable probable cause." *Id.* (internal citations omitted). Arguable probable cause exists "when a reasonable police officer in the same circumstances and with the same knowledge…could have reasonably believed that probable cause existed in light of well-established law." *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 880 (7th Cir. 2012) (internal quotation and citation omitted). On a motion for summary judgment, the reasonable officer inquiry must be done with the facts construed in favor of the nonmoving party. But "[o]nce a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott*, 705 F.3d at 723-24; *Chelios*, 520 F.3d at 691.

When facts material to a claim of qualified immunity remain in dispute, however, summary judgment is inappropriate. James Buchwalter et al., *Federal Procedure, Lawyers Edition* §11:342. Without a settled set of facts, it is premature for the court to analyze the purely legal question of whether a defendant is entitled to qualified immunity. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n. 13 (7th Cir. 2003). The Seventh Circuit highlighted this problem in *Morfin*, where the defendant arresting officer stated that the plaintiff had disobeyed a direct order from him to leave the premises. *Id.* The plaintiff, however, asserted that he was compliant with the officer's directions. *Id.* Because these key facts were in dispute, at the summary judgment stage, it was impossible to determine as a matter of law whether a reasonable officer could have determined that probable cause existed for the arrest. *Id.* The court went on to note that when the plaintiff "presents a factual account where a reasonable officer would *not* be

justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Id.*

The facts here present an analogous problem for the qualified immunity analysis. Nichols states that Johnson pulled away from him when he reached for Johnson's keys. If that claim were undisputed, then it would be true that a reasonable officer could have probable cause to arrest Johnson for obstruction and Nichols would be protected by qualified immunity. But Johnson disputes Nichols' account and asserts that he was compliant with the officers present at the scene and (1) gave the officers access to the building when they requested it; (2) showed them up the stairs; (3) attempted to identify the correct key for Nichols so he could open the hallway door himself; and (4) did not pull away from Nichols when he reached for the keys. As in *Morfin*, these conflicting accounts present a genuine issue of material fact and make a finding a qualified immunity unfeasible on a motion for summary judgment.

Thus, with respect to defendant Nichols, the motion for summary judgment on the false arrest claim is denied.

### b. Defendant Heard

Defendant Heard asserts that he played "no role in the arrest of Plaintiff" and therefore cannot be liable for false arrest. Defs.' Mot. for Summ. J., at 6. There is no dispute that Heard placed the handcuffs on Johnson at the top of the stairwell, which occurred moments before Nichols told Johnson he was under arrest. DSOF ¶ 18. That was at least a "seizure" under the Fourth Amendment. A person is "seized" when his or her freedom of movement is terminated or restrained by intentionally applied physical force. *Abbott*, 705 F.3d at 719 (internal citation

omitted). A seizure rises to the level of an arrest "when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir.2003) (internal quotation and citation omitted).

Heard is correct in noting that officers can momentarily seize parties who are present at the scene of a search warrant while officers are executing a warrant and Johnson does not contend that it was unlawful for police to handcuff him before he was arrested. Courts have recognized that as law enforcement execute high-risk warrants, such as the one at issue here, briefly securing third-parties present at the scene is a necessary—and reasonable—measure for law enforcement to take to protect themselves and others. *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (court noting that an officer's authority to detain incident to the execution of a search warrant is categorical). But such a seizure, initially lawful, may become unlawful if it rises to the level of an arrest that is made without probable cause. *See Ochana*, 347 F.3d at 270.

Here, Johnson was arrested within a few seconds of being handcuffed. True, it was Nichols who told Johnson that he was under arrest for obstruction, but at the time he did so Heard was not merely present but was physically restraining Johnson; Heard was directly participating in the events on which the arrest was predicated and continued to maintain custody of Johnson for some period following the arrest. A jury would not be irrational in concluding, then, in rejecting Heard's claim that he played "no role" in Johnson's arrest.[3]

Thus, summary judgment as to Johnson's false arrest claim against Heard is also denied.

### c. Defendants Lowrey, Leano, and Gonzalez

---

[3] As with Nichols, given that a number of key facts surrounding the arrest are in dispute, the court is unable to determine that as a matter of law qualified immunity shields Heard's conduct.

Defendants contend that because Lowrey, Leano, and Gonzalez were not present when Nichols told Johnson he was under arrest—and never applied any amount of force of on Johnson— summary judgment in their favor is warranted. Defs.' Mot. for Summ. J., at 6. In the context of a section 1983 claim, a defendant "can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group." *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (court noting that any defendant not alleged to be individually responsible for violation of the plaintiff's constitutional rights should be dismissed from the case); *Sneed v. Fox*, No. 11 C 1923, 2012 WL 4050831, at *2 (N.D. Ill. Sept. 13, 2012) (court finding defendant could not be liable for false arrest because, although present at the scene, he played no role in effectuating the plaintiff's arrest). Here, Johnson concedes that Lowrey, Leano, and Gonzalez used no force against him and he does not contend that they physically participated in his arrest on the stairway. It appears that Lowrey, Leano, and Gonzalez were all focused on executing the warrant on the target location and had little to no interaction with Johnson.

Because they played no role in the arrest, with respect to Johnson's false arrest claim against Lowrey, Leano, and Gonzalez, the defendants' motion to dismiss is granted.

2. **Excessive Force**

a. **Defendants Heard and Nichols**

Defendants Heard and Nichols contend that, as a matter of law, the amount of force they used when they arrested Johnson was reasonable. Defs.' Mot. for Summ. J., at 8-9. An officer who is initiating a lawful arrest has the right to use some degree of force to effectuate that arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). But an officer's application of force during an arrest, an investigatory stop, or any other type of seizure, is circumscribed by the Fourth

Amendment's reasonableness standard. *Id.* at 395. This objective analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Stainback v. Dixon*, 569 F.3d 767, 771-72 (7th Cir. 2009).

To the extent that Johnson's excessive force claim is based on his allegations that he was handcuffed too tightly, it falls short because he has adduced no evidence that any defendant knew that the handcuffs were causing Johnson pain, much less physical injury. The Seventh Circuit has "on occasion recognized valid excessive force claims based on overly tight handcuffs." *Tibbs v. City of Chi.*, 469 F.3d 661, 666 (7th Cir. 2006). In *Payne v. Pauley,* 337 F.3d 767 (7th Cir. 2003), for example, the court held that summary judgment was inappropriate when there was evidence that the arresting officers tightly handcuffed the plaintiff and refused to loosen the cuffs after she told them that the handcuffs were making her hands numb, and where she ultimately required two surgeries. *Id.* at 774–75, 781. *See also Herzog v. Vill. of Winnetka,* 309 F.3d 1041, 1042–43 (7th Cir. 2002) (refusing to loosen plaintiff's chafing handcuffs for over an hour constitutes excessive force in a case where plaintiff had violated no law, was arrested without probable cause, and did not resist); *Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir. 1987) (a properly instructed jury could have found excessive force based upon plaintiff's testimony that she did not resist arrest and the officers threatened to punch her, knee her in the back, drag her down a hallway, and handcuff her to a radiator so tightly that her wrists were bruised).

But where there is no evidence that officers knew that handcuffs had been applied too tightly, they are not liable for resultant injuries. In *Tibbs*, for example, the Seventh Circuit held that the plaintiff could not survive summary judgment where he "complained to [the officer]

once about his handcuffs without elaborating on any injury, numbness, or degree of pain; [he] was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury." 469 F.3d at 666; *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 298 (7th Cir. 2011) (no genuine issue of material fact regarding plaintiff's too-tight handcuffing claim when the police officer refused to loosen the handcuffs after the plaintiff complained only once that the cuffs were too tight, presented no evidence that he provided any elaboration, did not complain of any injury when he was taken to the jail, and did not receive any treatment).

With respect to the defendants' use of handcuffs, Johnson does not assert that he told Nichols and Heard that his handcuffs were too tight. In fact, Johnson acknowledges that he said nothing to either officer after he was placed under arrest. DSOF ¶ 31. Johnson did complain to the unidentified officer who was near the police transport wagon, but that officer quickly loosened Johnson's handcuffs and provided him with his asthma medication. DSOF ¶ 33. At the police station Johnson again complained to another officer—an officer who is not a defendant in this case—about his handcuffs, and again they were promptly loosened. DSOF ¶ 36. Unlike in *Payne*, Johnson never mentioned that his handcuffs were too tight to any of the defendants; he has therefore failed to establish that they "knowingly" used the handcuffs in a way that inflicted unnecessary pain on Johnson. *See Payne* 337 F.3d at 779; *Stainback*, 569 F.3d at 771-72. And while the defendants concede that the handcuffs "might" have caused the injury to Johnson's right hand, PSOF ¶ 18, there is no basis in the record to conclude that the officers knew that the handcuffs had been fastened so tightly that they were going to injure Johnson if not loosened.

Johnson maintains, however, that his excessive force claim is not premised solely on how tightly he was handcuffed; he asserts that, "In its entirety, the physical force used by the defendant officers in taking plaintiff into custody was unreasonable and excessive." Resp. at 7. With respect to the manner in which defendants effectuated the arrest, and construing the facts in favor of Johnson, the Court concurs to the extent that a reasonable jury could conclude that more force than was reasonably necessary was used in seizing Johnson. As he describes his encounter, Johnson was, while being fully cooperative with the police, grabbed suddenly, his right arm was twisted up above his head, and he was then shoved up against a wall, his arms were forced behind his back, and he was tightly handcuffed, all in a manner that caused injury to the radial nerve in his right hand and tore his labrum and a tendon in his bicep. Although this description lacks allegations of gratuitous violence that would plainly be unreasonable—*compare, e.g.*, *Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir.1987) (a properly instructed jury could have found excessive use of force if it believed plaintiff's testimony that officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised)—the Court cannot say that a jury, construing contested facts in Johnson's favor, could not rationally conclude that using force sufficient to cause nerve, cartilage, and tendon damage was excessive and unnecessary to handcuff a cooperative security guard who was not suspected of committing any offense (and where he was purportedly being handcuffed, in part, for his own safety). *See, e.g., Payne*, 337 F.3d 779-81 (reversing grant of summary judgment for officer alleged to have used excessive force in subduing and handcuffing an irate woman where officer threw her onto the ground, struggled with her for thirty minutes, and arrestee claimed to have suffered two wrist injuries); *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir.2002) (plaintiff was entitled to a jury trial on her excessive force claim where she produced evidence

that the arresting officer shoved her to the ground even though she was not resisting; cracked her tooth by forcing a breath-screening device into her mouth; waited over an hour to loosen handcuffs she complained were too tight; and forced her to provide a blood and urine sample at a hospital).

All that said, there is no evidence of record that defendant Nichols used any significant force against Johnson. It is undisputed that Heard was the officer who seized and handcuffed Johnson; Nichols' interaction with Johnson came after he had been handcuffed (hence his protest to Nichols that he could not give him the key because he was handcuffed). At that point, according to Johnson, Nichols began pulling at his waist in an effort to grab the key ring while Heard was still securing him from behind, causing him to almost fall as he was being pulled in two directions. But there is no basis to conclude that in grabbing the key ring off of Johnson's belt loop Nichols used unreasonable force against Johnson; there is no evidence that Nichols' actions (in contrast to Heard's) caused Johnson any pain or injury at all.

Accordingly, the Court grants summary judgment to defendant Nichols on the excessive force claim; the motion is denied as to defendant Heard.[4]

### b. Defendants Lowrey, Leano, and Gonzalez

As was the case with Johnson's false arrest claim, Johnson has failed to allege sufficient facts that could lead a reasonable jury to find that Lowrey, Leano, and Gonzalez used excessive

---

[4] The defendants' brief presents no argument for qualified immunity on the excessive force claim other than the argument that the defendants have qualified immunity as to a claim based on the manner in which Johnson was handcuffed. The Court's denial of the motion as to defendant Heard, however, is premised on all of the force used in seizing Johnson, not just the question of whether the handcuffs were applied too tightly. Having thus failed to advance a qualified immunity argument on that basis, defendant Heard has forfeited the argument in opposing the motion for summary judgment. He may, however, reassert the argument at trial. *Cygnar v. City of Chicago,* 865 F.2d 827, 843 n.16 (7th Cir. 1989).

force against him. Johnson admits that these defendants did not physically arrest him or otherwise use force against him. DSF ¶ 39. This admission is fatal to his claim that these defendants use excessive force during his arrest. *See Eades*, 823 F.2d at 1063. Thus, with respect to defendants Lowrey, Leano, and Gonzalez, the defendants' motion for summary judgment on Johnson's excessive force claim is granted.

3. **Conspiracy**

In his complaint, Johnson alleges that "Defendants conspired amongst themselves to falsely arrest and detain Plaintiff without probable cause." Compl. at ¶ 24. Defendants contend that Johnson has offered no evidence of a conspiratorial agreement. Defs.' Mot. for Summ. J., at 7. To prevail on his conspiracy claim, Johnson must establish an express or implied agreement among defendants to deprive him of his constitutional rights, and actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *See Amundsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000). Here, Johnson has failed to allege sufficient facts to support such a claim.

Johnson asserts that the officers' pre-warrant planning meeting constitutes a sufficient basis to infer that the defendants conspired together. Pl.'s Resp. to Defs.' Mot. for Summ. J., at 13. However, in order for a conspiratorial agreement to be sufficient, the defendants must have a meeting of the minds and mutually understand that they are "directing themselves toward an unconstitutional action." *Amundsen*, 218 F.3d at 718. Here, Johnson does not allege that during the planning meeting the defendants discussed and planned how they would arrest him without probable cause, use excessive force against him, or otherwise violate his constitutional rights. And even if he had, the record is devoid of facts that would support such an allegation. Without "a whiff of the alleged conspirators' assent" Johnson's conspiracy claim is "vague, conclusionary

and include[s] no overt acts reasonably related to the promotion of the alleged conspiracy," which makes summary judgment in the defendants' favor appropriate. *Id.* Accordingly, with respect to Johnson's conspiracy claim against all the named defendants, the defendants' summary judgment motion is granted.

4. **Failure to Intervene**

   a. **Defendants Heard and Nichols**

Johnson's final claim against the defendants is for a failure to intervene in his alleged constitutional deprivations. In order to prevail on his failure to intervene claim, Johnson must establish that the defendant officers "had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

As discussed above, when construing the facts in Johnson's favor, it is possible that a reasonable jury could find that he was unjustifiably arrested for obstruction and that excessive force was used against him. Given that it is undisputed that the arrest occurred in the presence of Nichols and Heard, a jury could also conclude that, if one or the other was not directly liable for the conduct, they nevertheless knew of and failed to intervene in an effort to prevent it. Heard maintains that he did not participate in the arrest, but a jury may conclude that he should have intervened to prevent Nichols' action (if the jury deems Nichols to have lacked probable cause to arrest); similarly, though Nichols appears not to have been directly involved in handcuffing Johnson, the jury could reasonably conclude that he should have taken some action to mitigate the force being used against Johnson in taking him into custody. These determinations are best left for the finder of fact. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (court

noting that failure to intervene claims "almost always implicate questions of fact for the jury");

*Lanigan v. Village of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."). As such, defendants' motion for summary judgment on Johnson's failure to intervene claim is denied with respect to defendants Heard and Nichols.

### b. Defendants Lowrey, Leano, and Gonzalez

However, the defendants' motion for summary judgment on plaintiff's failure to intervene claim against defendants Lowrey, Leano, and Gonzalez is granted. As discussed previously, Johnson admits that these defendants played no part in his physical arrest. DSF ¶¶ 39, 43. It also appears from the record that they were engaged with the actual execution of the warrant and were not privy to the events leading up to Johnson's arrest. *Id.* Because they had no involvement in Johnson's arrest and were unable to observe the events leading up to his seizure, there is no way these defendants could have "had reason to know" a false arrest might be occurring. Thus, as a matter of law, a duty to intervene could never have attached to them and the defendants' motion for summary judgment is granted with respect to these defendants.

\*\*\*

In conclusion, Johnson may proceed with his false arrest and failure to intervene claims against Nichols and Heard. He may also continue with his excessive force claim against Heard. The defendants' motion for summary judgment on Johnson's remaining claims against Nichols and Heard, however, and all of his claims against the remaining defendants, is granted.

Date: September 28, 2015

_____

John J. Tharp, Jr.
United States District Judge